DANIEL, J.
The only questions which we have to consider, are those arising out of the ruling of the Circuit court in respect *805 to the fifth and sixth instructions asked for by the plaintiff in error on the trial.
By the fifth instruction the court was asked to say to the jury, that if they _ believed from the evidence, that the injury received by the defendant in error was caused by the cars being' thrown off the track by a large rock suddenly rolled down upon the track by the servants of Brown & Crickhard, contractors for the performance of work which did not necessarily or properly concern the running of the road, nor connect itself with or affect the track or the carrying of passengers Thereon safely, and by no other carelessness ; and that the rolling down of the said rock as aforesaid, could not have been foreseen nor provided against by the conductors of the cars, then, although the contract of the company with Brown & Crickhard required that their work should be done according to the requirements of the principal and other engineers of the company, and that Brown & Crickhard should carry out their directions, &c. ; yet those provisions in the said contract did not make the employees of Brown & Crickhard servants of the company ; and the jury should find for the company.
The sixth instruction asserts the proposition, that although it be true that a common carrier is not at liberty to depute another party io perforin any part of his duty in reference to the transportation of passengers, and cannot rely on such a deputation to relieve him from responsibility; yet in a matter not relating to the duty of transportation of passengers, but collateral thereto, and not necessarily affecting the duty of the company as carriers, they stood on the same footing with other persons, and might rely on the default of their subcontractor to the same extent as any other party could do.
The court refused to give the fifth instruction, and gave no other in lieu of it. The court also refused to give the sixth instruction as asked, but in lieu of it, instructed the jury, that although it be true that a common carrier is not at liberty to depute another party to perforin any part of his duty in reference to the transportation of passengers, and cannot rely on such a deputation to relieve him from responsibility; yet in a matter not relating to the duty of transportation of passengers, nor connected with the i.a,Jety of the toad, but collateral thereto, and not necessarily affecting their duty as carriers, the company stood on the same footing with other persons, and might rely on The default of their subcontractor to the same extent that any other party could do. The modification made by the court in the instruction, as asked, consisting in the interpolation of the words which I have italicised.
It appears from the certificate of the facts, that Brown & Crickhard were the contractors for the construction of the nineteenth section of the road (the section on which the injury was received) ; and that their contract included the delivery upon the line of the road, and preparing for the use of the track layers, the stone necessary for ballasting the road; that some month or two before the happening of the act complained of, it became desirable to lay the track upon the nineteenth section, and to use it for the passage of the cars: that Brown & Crick-hard were not then ready with the stone for ballasting, and that as ballasting was designed merely to secure the permanency aid durability of the superstructure, and was not deemed by the company essential to the present safety of the road, the engineer required the track to be laid without the stone ballasting: and the road was thus brought into use without the ballasting. Brown & Crickhard were required to go on and deliver and prepare the stone for ballasting-; and were instructed to place it on the line of the road, outside of the track, in such a position that it could be either used for ballasting or conveniently placed upon cars to be transported elsewhere on the line; though they were instructed not to place it. upon the track, or on or between the ties.
It further appears, that Brown & Crickhard were engaged, with a force of fifteen or twenty hands, in delivering and preparing this ballasting, and that the mode of doing it was to place unbroken stone along the line of the road outside of the track, and then to break and heap it up in ridges of convenient size and shape to be measured and received by the engineers. '"These hands were engaged at this work at the time the train came up on the day of the injury, and some of them appeared to have been sitting astride Ihe stone ridges, and to have just left their places to avoid the near passing of the cars.
It was proved that the car was thrown from the track by striking against,a large stone on the track; but there was a conflict of opinion among- the witnesses as to how the stone came to be on the track.
hio one saw exactly how the matter occurred, and the witnesses expressing their belief, from the appearances discovered on after examination, differed in opinion as to the precise manner in which the accident was caused.
One witness expressed the belief, as file result of his examination, that the ridge of stone at that point was so near the rail that it was struck by the step of the baggage car, and that by the disturbance, thus caused, a large stone was rolled from the top of the ridge, just in front of the wheel of the first passenger car: And in support of this opinion, the witness stated that he observed that the step was very much bent and injured. Another witness thought that the ridge had been disturbed, and the stone rolled down by the hub of one of the wheels of the baggage car; and stated that the casting which covered the hub was very mtich broken. Another thought that the stone had been, rolled down by the jarring of the train as it passed near the stone ridge. Another, that the stone had probably been loosed from its place and rolled *806 down by the haste of one of the hands of Brown & Crickhard in getting off the ridge ■to avoid the train; and gave as his reason that on examining the spot he found the apron and hammer of one of said hands at the point from which the stone had probably rolled, and saw no evidence that the train had struck the ridge of rock. All, however (the certificate proceeds), *concurred in the opinion that the stone was rolled under the train while in motion, and the stone was found deeply imbedded in one of the ties. The wheel of the car was broken, and the end of the car thrown from the track against a bank, breaking the car, and injuring the 'plaintiff.
It was found that the nineteenth section had not been surrendered to the control of the road master charged with keeping the road in repair, but was still in charge of the engineer department as under construction.
The engineer who had charge of the section, stated that he considered the contractors Brown & Crickhard and their hands as under his control, and that he had given them such orders as, if obeyed, could have prevented such an occurrence. He further stated that he had frequent occasion to pass over this section of the road, and that he had never observed that any of the stone ridges were so near the track as to be dangerous : if he had, he would have had the authority and it would have been his duty to have them promptly removed. Another witness testified that being in charge of a gravel train in the service of the company, he had <had frequent occasion to pass along the line over the nineteenth section, and that he had several times called the attention of those engaged in preparing this ballasting to the fact that the stone ridges were too near the rails, and that there would some accident occur if they were not removed.
I have thus followed up the instructions, with the certificate of the evidence, believing that a mere reading of the two in their immediate connection will of itself go very far towards showing the true object and meaning of the instructions, and the consequent propriety or impropriety of the ruling of the Circuit court in respect to them.
Before proceeding' to make such comments upon the *case as may, however, still seem necessary in order fully to test the correctness of the judgment of the Circuit court, it will, I think, be found convenient to direct our attention first to the nature of the contract (express or implied between the parties), by the negligent performance of their part whereof, by the company, the injury to the defendant in error is alleged to have been caused.
And here, in the first place, it is obvious to remark that, whilst the diligence which the law requires of a rail road company in the performance of its duties as the carrier of passengers on its cars, is in no respect inferior in degree to that expected of any other common carrier of passengers by land, the sphere of such duties is, in the case of the rail road company, generally of a much broader extent than that which usually limits the office and duty of a carrier of passengers by stage coaches or other like means of public conveyance. This enlargement of the limits of the duties and responsibilities of the rail road company grows out of the consideration in part that they are ordinarily not only the owners of the carriages or vehicles in which the passengers are transported, and of the motive power, but also the sole and exclusive proprietors of the track and of a certain space immediately contiguous on each side. Combining in themselves the ownership as well of the road as of the cars and locomotives, they are bound to the most exact care and diligence not only in the management of the trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of passengers. McElroy & wife v. Nashua and Lowell Rail Road Corporation, 4 Cushing’s R. 400. And in order to show that they have used such care and diligence in the construction of their road, it is not sufficient to show merely that they em-pk>3red for the purpose men of compe-237 tent skill and *science. Thus, in the case of Grote v. The Chester and Holyhead Railway Company, 2 Exch. R. 251, which was an action, against a rail way company for an injury received by the plaintiff by the breaking down of a bridge over which he was passing in a passenger train, it was held that it was a proper question for the jury whether the defendants had engaged the services of competent engineers who had adopted the best method and used the best materials, and that, if the defendants had done so, they would not be liable; but that the mere fact of their having engaged the services of such a person would not relieve them from the consequences of an accident arising from a deficiency.
And as accidents as frequently arise from obstructions on the track, as perhaps from any other cause whatever, it would seem to follow, obviously, that there is no one of the duties of a rail road company more clearly embraced within its warranty to carry their passengers safely, as far as human care and foresight will go, than the duty of employing the utmost care and diligence in guarding their road against such obstructions.
It would seem to me to follow further, that where a rail road company, whilst using its track for the carriage of passengers, engages in a work to be done on its road, and in the immediate proximity of its track, negligence in the performance of which would, in the estimation and opinion of cautious persons, involve the hazard of obstruction to the passage of its cars, it would be just as incompetent for them, in the case of an accident to a passenger caused by an obstruction arising from negligence in the performance of such work, to show merely that they had placed the work in the *807 hands of a contractor, and that the obstruction was caused by the carelessness of one of his employees, as it would be for them, in the case of an accident to a passenger, arising- from a want of care or skill in the ^management and conduct of the train, to show that such management and conduct had been let out to a contractor, and that the accident was due exclusively to the carelessness of one of his employees.
In neither case, I apprehend, could such a depmtation by the company of its powers and duties to another, shield it against the complaint of an injured passenger.
It seems to me that the fifth instruction asked, if not plainly in conflict with these principles, is obviously susceptible of an interpretation which might have led to a verdict in disregard of them. We have seen that Brown & Crickhard were engaged in the work of delivering upon the line of the road, and preparing for the use of the tracklaj'ers, the stone necessary for ballasting the road; and we have seen also that the ballasting was designed merely to secure the permanency and durability of the superstructure, and was not regarded by the company as necessary to the present safety of the road; and there is nothing to show that it was so necessary. Under one sense in which the jury might well have understood the instruction, they might have found that the work in which Brown & Crickhard were engaged “did not necessarily or properly concern the running of the road nor connect itself with or affect the track or the carrying of passengers thereon safely;” though at the same time believing that the company had not used due diligence in guarding- against accidents which might arise from negligence in the disposition, management and performance of the work. It might well be that the delivery of stone on the road and its preparation for ballasting, if done in a proper manner and with due care, would not affect the track or the carrj-ing of passengers thereon safely: And yet there was evidence tending to show that there was negligence either in Brown & Crickhard or in the officers *of the company in so regulating the heaps or ridges in which the stone was placed, and the proximity of those ridges to the track, as to make them a source of danger to the trains in their passage on the track. For let the theory of either one of the witnesses who expressed their)belief as to the manner in which the accident occurred, be adopted; let it be that the ridge of stone was so near the rail that it was struck by the step of the baggage car, or that the ridge had been disturbed and the stone rolled down by the hub of one of the wheels of the baggage car, or that the stone had been rolled down by the jarring of the train as it passed near the stone ridge, or (which is the theory adopted in the instruction) that the stone had prob-aba been loosed from its jdace and rolled down by the haste of one of the hands of Brown & Crickhard in getting off the ridge to avoid the train : In either one of these aspects, there would be evidence before the jurj' tending strongly to show a want of due care on the part of those, whoever they were, who had the control and management in the locating and disposing of the heaps and ridges of stone. Not only so; _ but, whilst there was the evidence of the engineer of the section that he had frequent occasion to pass over the section, and that he had never observed that any of the stone ridges were so near the track as to be dangerous, there was y.et also the evidence of another witness, who likewise had frequent occasion to pass over this section, and who stated that lie had repeatedlj' called the attention of those engaged in preparing the ballasting, to the fact that the stone ridges were too near the rails, and that there would be some accident if they were not removed.
With such evidence in the case, can there be a serious doubt that the jury should have been left free to enquire whether there was not danger in the work, arising from the mode and manner in which it was *don'e; whether the company did not know, or, by the exercise of the proper diligence, might not have ascertained the existence of such danger; and whether they had used due care and foresight in guarding against it? I think not. And yet according to a sense of the instruction in which it might well have been understood, these enquiries were withdrawn from the jury. It is true, that the words “no other carelessness,” are used in such a connection as to make the instruction susceptible of the meaning that the verdict of the jury was to be based upon a finding negativing all negligence upon the part of the company. But the fair meaning of the instruction in the particular under consideration, is, I think, one which confines the jury to the finding that the sole and exclusive immediate cause of the disaster (the sudden rolling down of the stone upon the track) was the careless act of the servants of Brown & Crickhard, and that the rolling down of the stone could not have been foreseen nor provided against by the conductors of the cars.
In the view which I take of the case, the enquiry whether Browm & Crickhard were contractors for the work in which they were engaged, is not material. For if the company, by its officers charged with 1he duty of guarding the track against obstructions, saw, or might, by the exercise of proper vigilance, have seen that Brown & Crick-hard were placing the stone in such close proximity to the track, or otherwise disposing of the material used in the work, in a manner calculated to excite in the minds of cautions persons fears and apprehensions for the safety of the track, it was their duty to use the utmost care and diligence to provide against the danger: and we have the evidence of the engineer, that in case he had observed that the ridges had been placed so near the track as to be dangerous, he would have had the authority, and it would have *808 been his duty to have them promptly removed.
*Any instruction requiring the jury to render a verdict for the company upon a finding which did not clearly negative the want of care, skill or foresight on the part of the company not only in the conduct and management of the train, but also in all the other particulars wherein I have shown the passengers had a right to expect the exercise of such care, skill and foresight by the company and its officers, would have been unjust to the defendant in error. Had the fifth instruction been given, the jury might, and most probably would have rendered a verdict for the company upon a finding far less comprehensive than the one just indicated as essential to such a verdict ; and the Circuit court properly refused to give' it.
If the company desired to narrow the range of the discussion, and to stake their case on one or more distinct issues, to be found under instructions as to the law applicable to them, it was their business so to frame the instructions as that they might be given with safety as to the rights of the other side.
I have been unable to discover that the Circuit court did any thing to the prejudice of the plaintiff in error in making the slight modification which it made in the sixth instruction. The testimony, in relation to the work undertaken and performed by Brown & Crickbard, was the only evidence in the case to which the proposition of law, contained in the instruction, could be intended to refer. And the only effect which (it seems to me) the words interpolated by the court, to wit, “nor connected with the safety of the road,” could well have, -would be, to explain to some extent the preceding words in the instruction, and to point the jury to the enquiry whether the work aforesaid was of a character to fall within the designation of the instruction.
The court gave no intimation of its opinion as to the state of the facts of the case; and I do not think *that the slight change which it made in the terms of the instruction, is in any respect objectionable.
I have examined with care the cases cited by the counsel of the company in support of their assignment of errors, and I do not perceive that they declare any principle in conflict with the foregoing views. The duties which a carrier of passengers owes to his passengers, and the duties which he owes to other persons, between whom and himself the relation of carrier and passenger does not exist, are essentially distinct. Decisions, therefore, settling how far it is competent for a company engaged in the business of carrying passengers to protect itself against a suit brought by a stranger for an injury received from the negligent act of an employee of a contractor of the company engaged in the prosecution of a work of the company, by showing that such employee was not, in a legal sense, the servant of the company, do not seem to me to have any immediate bearing on the case in hand. The two cases more especially relied on by the counsel of the company, viz: Reedie v. London & Northwestern Railway Company, 4 Exch. R. 244, and Steel v. Southeastern Railway Company, 223 Eng. L. & E. R. 366; were cases of the kind just indicated. In each case the suit was at the instance not of a passenger, but of a stranger.
In each case, the injury received was caused not by any accident happening in the running of the trains, but by an accident arising from the carelessness of employees of contractors engaged in the prosecution of a work altogether collateral to the running of the cars on the road.
In neither case had the company come under any contract or engagement with the party injured.
The difference is broad and obvious between such cases and the case of an injury received on the cars of a railway company, in their passage on the road, by a *passenger who has taken his seat under the assurance and promise, on the part of the company (which the undertaking necessarily implies), that they have used, and will continue to use all the means of precaution, within the power of human foresight and sagacity, to 'provide for his safe transportation.
Upon the whole, I am of the opinion that there is no error in the judgment of the Circuit court, and am for affirming it with costs, &c.
The other judges concurred in the opinion of Daniel, J.
Judgment affirmed.